**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000355
30-JAN-2015
07:49 AM**

NO. CAAP 14-0000355

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
WILLIAM MCDONNELL, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR. NO. 13-1-0002)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Ginoza, J.;
and Reifurth, J., concurring)

Defendant-Appellant William McDonnell (**McDonnell**)
appeals from the Judgment of Conviction and Sentence; Notice of
Entry (**Judgment**) filed on November 19, 2013 in the Family Court
of the First Circuit (**Family Court**).[1]  Following a jury trial,
McDonnell was found guilty of Count I, Sexual Assault in the
First Degree (Hawaii Revised Statutes (**HRS**) § 707-730(1)(b)
(Supp. 2013)), and Counts IV-VI, Sexual Assault in the Third
Degree (HRS § 707-732(1)(b) (Supp. 2013)), and sentenced to a
twenty-year term of imprisonment for Count I and concurrent
five-year terms for Counts IV-VI.

On appeal, McDonnell raises two points of error,
contending that:  (1) Counts IV-VI should be vacated and remanded
with instructions to dismiss because the indictment failed to
allege that McDonnell was aware that the complainant was not

---

[1]    The Honorable Randal K.O. Lee presided.

married to him, which is an essential element of Sexual Assault in the Third Degree; and (2) the Family Court erred by allowing certain testimony from expert witness Dr. Alexander Bivens (**Dr. Bivens**) which was improper under Hawai'i Rules of Evidence (**HRE**) Rules 401, 402, 403, and 702.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve McDonnell's points of error as follows:

(1) Counts IV, V, and VI of the January 17, 2013 indictment against McDonnell state in relevant part:

> COUNT IV: On or about the 1st day of November, 2012, to and including the 13th day of January, 2013 in the City and County of Honolulu, State of Hawaii, WILLIAM MCDONNELL, being the parent or guardian or any other person having legal or physical custody of K.M., did knowingly subject to sexual contact, K.M., who was less than fourteen years old or did cause K.M. to have sexual contact with WILLIAM MCDONNELL, by placing his hand on her buttock, thereby committing the offense of Sexual Assault in the Third Degree, in violation of Section 707-732(1)(b) of the Hawaii Revised Statutes.
> . . . .
>
> COUNT V: On or about the 1st day of November, 2012, to and including the 13th day of January, 2013, in the City and County of Honolulu, State of Hawaii, WILLIAM MCDONNELL, being the parent or guardian or any other person having legal or physical custody of K.M., did knowingly subject to sexual contact, K.M., who was less than fourteen years old or did cause K.M. to have sexual contact with WILLIAM MCDONNELL, by placing his hand on her genitalia, thereby committing the offense of Sexual Assault in the Third Degree, in violation of Section 707-732(1)(b) of the Hawaii Revised Statutes.
> . . . .
>
> COUNT VI: On or about the 1st day of November, 2012, to and including the 13th day of January, 2013, in the City and County of Honolulu, State of Hawaii, WILLIAM MCDONNELL, being the parent or guardian or any other person having legal or physical custody of K.M., did knowingly subject to sexual contact, K.M., who was less than fourteen years old or did cause K.M. to have sexual contact with WILLIAM MCDONNELL, by placing his hand on her breast, thereby committing the offense of Sexual Assault in the Third Degree, in violation of Section 707-732(1)(b) of the Hawaii Revised Statutes.
> . . . .

HRS § 707-732(1)(b) states that a person commits Sexual Assault in the Third Degree when "[t]he person knowingly subjects to sexual contact another person who is less than fourteen years

old or causes such a person to have sexual contact with the person." "Sexual contact" is further defined as:

> any touching, other than acts of "sexual penetration", of the sexual or other intimate parts *of a person not married to the actor*, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

HRS § 707-700 (1993 & Supp. 2013) (emphasis added).

During the trial court proceedings, McDonnell did not challenge the sufficiency of the indictment. Where the appellant alleges a charge is defective for the first time on appeal, an appellate court must "liberally construe the indictment in favor of validity[.]" State v. Motta, 66 Haw. 89, 93, 657 P.2d 1019, 1021 (1983); see also State v. Wells, 78 Hawai'i 373, 894 P.2d 70 (1995). In such circumstances, a conviction will not be reversed "unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." Motta, 66 Haw. at 91, 657 P.2d at 1020.

On appeal, McDonnell asserts for the first time that the indictment failed to allege all the essential elements of the offense charged. Specifically, McDonnell contends that Counts IV-VI of the indictment failed to allege the essential element that McDonnell was aware that the complainant was not married to him, rendering the charge deficient. The Hawai'i Supreme Court has set out the four material elements of the offense of Sexual Assault in the Third Degree under HRS § 707-732(1)(b), one of which is "that [the defendant] was aware that the Minor was not married to him (i.e., the requisite knowing state of mind with respect to the attendant circumstance implicit in 'sexual contact,' . . .) [.]". State v. Arceo, 84 Hawai'i 1, 15, 928 P.2d 843, 857 (1996); see also State v. Muller, No. CAAP-10-0000225, 2014 WL 444230 (App. Jan. 31, 2014) (SDO), cert. rejected, No. SCWC-10-0000225, 2014 WL 1758391 (Haw. Apr. 29, 2014).

Although McDonnell challenges the sufficiency of the charge for the first time on appeal, for the same reasons this court articulated in Muller, McDonnell's conviction on Counts IV-

VI must be vacated and the case remanded for dismissal without prejudice. As Muller explains:

> Recently, in State v. Akitake, No. SCWC-29934 (Haw. Jan. 10, 2014) (SDO), the Hawaii Supreme Court held in similar circumstances, i.e. the defendant challenged the charge for the first time on appeal, that because the charge lacked an allegation of an attendant circumstance which was an element of the offense, the charge failed to state the subject offense. The majority in Akitake relied on State v. Apollonio, 130 Hawaiʻi 353, 358, 311 P.3d 676, 681 (2013), and stated in relevant part:
>
> > As the charge lacked an allegation of an attendant circumstance, which is an element of the offense of OVUII, it failed to state the offense of OVUII. Cf. State v. Apollonio, 130 Hawaiʻi 353, 358, 311 P.3d 676, 681 (2013)(dismissing without prejudice excessive speeding complaint, the deficiency of which was raised for the first time on appeal, because complaint failed to allege mens rea, and could therefore not be construed to state the offense of excessive speeding).
>
> Akitake, SDO at *1. The relevant portion of Apollonio, in turn, held that even under the liberal construction standard, because the charge failed to allege the required mens rea, the charge "cannot be reasonably construed to state an offense." 130 Hawaiʻi at 358, 311 P.3d at 681 (citation and internal quotation marks omitted).
>
> Here, Count II failed to allege an attendant circumstance which was an element of the offense. Under the holdings and rulings in Apollonio and Akitake, even though Muller did not challenge the sufficiency of the charge until this appeal, the charge "cannot be reasonably construed to state an offense" and the conviction must be vacated.

Muller, 2014 WL 444230 at *2.

In this case, Counts IV-VI failed to allege an attendant circumstance which was an element of the offense and, for the reasons stated above, the conviction on these counts must be vacated.

(2) The Hawaiʻi Supreme Court has previously recognized the danger of unfair prejudice when allowing expert witness testimony in child sex abuse cases, saying:

> We are cognizant that cases involving allegations of child sexual abuse are difficult to prove, but they are equally difficult to defend against. Courts must proceed with caution in admitting expert testimony in these cases. The trial court must be satisfied that the witness is indeed an expert and that the testimony is relevant. The testimony must further be shown to assist the jury to comprehend something not commonly known or understood. And experts may

not give opinions which in effect usurp the basic function of the jury.

State v. Batangan, 71 Haw. 552, 562, 799 P.2d 48, 53-54 (1990). In the same case, the supreme court also recognized the importance of expert testimony in such cases to dispel commonly held misconceptions regarding child victims of assault:

> Child victims of sexual abuse have exhibited some patterns of behavior which are seemingly inconsistent with behavioral norms of other victims of assault. Two such types of behavior are delayed reporting of the offenses and recantation of allegations of abuse. Normally, such behavior would be attributed to inaccuracy or prevarication. In these situations it is helpful for the jury to know that many child victims of sexual abuse behave in the same manner. . . .
>
> Thus, while expert testimony explaining "seemingly bizarre" behavior of child sex abuse victims is helpful to the jury and should be admitted, conclusory opinions that abuse did occur and that the child victim's report of abuse is truthful and believable is of no assistance to the jury, and therefore, should not be admitted. Such testimony is precluded by HRE Rule 702.

Id. at 557-58, 799 P.2d at 51-52 (citations omitted).

Here, McDonnell objects to Dr. Bivens's testimony regarding the behavior of child victims of sex abuse and the behavior and characteristics of child molesters, arguing:

> The Circuit Court erred in allowing Bivens to testify under HRE Rule 702,[2] because his testimony (1) was irrelevant; (2) did not assist the jury in comprehending or understanding something not commonly known or understood; (3) improperly bolstered KM's credibility, and (4) improperly profiled McDonnell as a child molester. The Circuit Court also erred in allowing Bivens to testify because his testimony was irrelevant and unduly prejudicial under HRE Rules 401,[3] 402,[4] and 403.[5]

---

[2]     HRE Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert."

[3]     HRE Rule 401 provides: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[4]     HRE Rule 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the
(continued...)

McDonnell argues that testimony regarding the phenomenon of delayed reporting is irrelevant because "this case did not involve delayed reporting in any significant way" since K.M. reported the November 2012 incident to her mother and a friend the day after it occurred and reported the final January 2013 incident to her counselor the following day. However, while K.M. reported two of the alleged incidents soon after they occurred, she testified as to other alleged assaults that took place between November 20, 2012 and January 13, 2013 that were not immediately reported, including McDonnell touching her breast while she was using the computer, giving her a "sexual hug", digitally penetrating her vaginally and anally, taking nude pictures of her, and putting his mouth on her vagina. Dr. Bivens's testimony was relevant and helpful to understand why such abuse might not be reported immediately. Batangan, 71 Haw. at 557, 799 P.2d at 51-52 (in situations where there is delayed reporting, "it is helpful for the jury to know that many child victims of sexual abuse behave in the same manner.").

McDonnell also challenges the relevance of Dr. Bivens's testimony regarding child memory of sexual abuse and recantation saying that neither are at issue in the present case. However, McDonnell does not point to any place in the record where Dr. Bivens testified about recantation and we find no such testimony. As to memory, McDonnell contends that testimony regarding child memory did nothing to assist the jury in "ascertaining truth in relevant areas outside the ken of ordinary laity" since Dr. Bivens testified that the way a child remembers sexual assault is not necessarily different from the way people like police officers and war veterans remember traumatic events. We

---

⁴(...continued)
State of Hawai'i, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

⁵      HRE Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

disagree. Dr. Bivens provided helpful descriptions of how a child could experience a sort of "tunnel memory" where he or she may recall the event well but not other peripheral details. This is relevant in this case where K.M. apparently gave different accounts as to the date of the initial abuse as it gives the jury context to evaluate her behavior "where the normal indicia of reliability might not apply." See State v. Transfiguracion, No. CAAP-11-0000048, 2012 WL 5897413 at *4 (App. Nov. 21, 2012) (SDO), cert. rejected, No. SCWC-11-0000048, 2013 WL 1285112 (Mar. 28, 2013). We also reject McDonnell's argument that "even if delayed reporting or recantation had been at issue, there was no reason to conclude that such phenomena are still 'outside the ken of ordinary laity' over twenty years after Batangan was decided." See id. at *2.

McDonnell argues that Dr. Bivens's testimony that a large percentage of child sex abuse victims acted as K.M. did "usurped the function of the jury" by bolstering K.M.'s credibility. First, under Hawai'i law, expert testimony which tends to bolster the credibility of a witness is not necessarily inadmissible, but "conclusory opinions that abuse did occur and that the child victim's report of abuse is truthful and believable is of no assistance to the jury, and therefore, should not be admitted." Batangan, 71 Haw. at 558, 799 P.2d at 52. Here, however, Dr. Bivens did not give an opinion as to the credibility of K.M. or any other witness. In fact, Dr. Bivens did not testify, as asserted by McDonnell, that a large percentage of child sex abuse victims acted as K.M. and, instead, told the jury he was not aware of the facts of the case. Thus, Dr. Bivens's testimony did not improperly bolster K.M.'s testimony or usurp the function of the jury. Transfiguracion, 2012 WL 5897413 at *2, see also State v. Kony, No. CAAP-12-0001114, 2014 WL 812997 at *2 (App. Feb. 28, 2014) (SDO), cert. granted, No. SCWC-12-0001114, 2014 WL 3513030 (July 15, 2014).

For these reasons, we conclude it was not error for the court to allow Dr. Bivens to testify about delayed reporting or child memory.

Dr. Bivens also testified regarding two studies on the completeness of child victims' initial disclosures. One study, which involved several hundred college students who were molested as children, found that about seventy-five percent gave very vague, general descriptions of what had happened to them when they first reported their abuse. The other study involved eleven children who had been sexually abused and found that they initially reported roughly half the number of incidents and also half the severity of incidents that actually occurred.

McDonnell's counsel objected to this testimony as prejudicial, arguing that there is no evidence that K.M.'s initial disclosures may have been incomplete.[6] "[T]he issue of incomplete disclosure fits with delayed reporting and inconsistency in that it provides the jury with context to evaluate the behavior of the minor complainants where the normal indicia of reliability might not apply." Transfiguracion, 2012 WL 5897413 at *4. We conclude that the Family Court did not err in admitting the testimony regarding incomplete disclosure because it was relevant and not overly prejudicial.

After the first incident, K.M. told her mother "my dad had touched me that night."[7] K.M. testified that after this disclosure, she did not tell her mother about any other incidents because "I thought she wouldn't do anything." K.M. also described a time between the November and January incidents when she thought her mother had observed McDonnell abusing K.M. When her mother asked what was going on, K.M. lied and said nothing happened because "I didn't want to see my mom sad." K.M. did not disclose again until January 2013 when she told her counselor that the abuse had been ongoing for several months because "I knew she'd do something about it." Dr. Lee testified that during his examination of K.M., she reported that there had been more

---

[6] McDonnell had previously sought to exclude Dr. Bivens testimony in a motion in limine and stated that he was renewing his previous objections to Dr. Bivens' testimony.

[7] Due to a hearsay objection made by defense counsel, K.M.'s mother was unable to testify specifically as to what K.M. had disclosed during this conversation. K.M.'s friend did not testify at trial.

than 20 separate incidents. Taking this testimony as a whole, we conclude that the evidence shows K.M.'s initial disclosures were incomplete.

Dr. Bivens testified that in their initial disclosures, child abuse victims often give very vague, general descriptions "when in fact it may have been much more elaborate than that." Relatedly, as to delayed disclosures, Dr. Bivens explained that children often have difficulty disclosing because "they expected to be blamed, that they were embarrassed, that they didn't want to upset anybody, and that they expected not to be believed." Dr. Bivens's testimony is helpful in understanding not only K.M.'s silence after first disclosing to her mother, but also why she may not have described any details of the abuse initially. Moreover, because Dr. Bivens told the jury he did not know the facts of the case, and because the State did not imply that McDonnell committed any other assaults in addition to what K.M. testified to during trial, Dr. Bivens did not opine that K.M. was underreporting the abuse. Thus, we conclude that the Family Court did not err in finding this testimony relevant and did not abuse its discretion in concluding that the admission of Dr. Bivens's incomplete reporting testimony was not substantially more prejudicial than probative.

Finally, McDonnell contends that Dr. Bivens's "testimony regarding typical child molesters and the abuse process amounted to improper profile evidence, and any minimal probative value that this evidence had was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." In support of his argument, McDonnell cites to cases outside of this jurisdiction wherein courts have held that evidence about typical sex offender behavior was inadmissible. See, e.g., Hall v. State, 692 S.W.2d 769 (Ark. Ct. App. 1985), State v. Hansen, 743 P.2d 157 (Or. 1987), State v. Claflin, 690 P.2d 1186, 1190 (Wash. App. 1984), State v. Petrich, 683 P.2d 173, 180 (Wash. 1984), State v. Maule, 667 P.2d 96, 99 (Wash. App. 1983). We also note the dissent to the rejection of certiorari in State v. Transfiguracion, No.

9

SCWC-11-0000048, 2013 WL 1285112 at *9, 12 (Mar. 28, 2013) (SDO) (Acoba and Pollack, JJ., dissenting), which would have held, in another child sex abuse case in which Dr. Bivens testified, that Dr. Bivens's testimony about the "abuse process" and "grooming process" was inadmissible as profile evidence which was substantially more prejudicial than probative.  Id. 2013 WL 1285112 at *6 (footnote and citations omitted).

However, this court has consistently held that Dr. Bivens's testimony regarding characteristics of child molesters, i.e., the "abuse process" is admissible.  See, e.g., Kony 2014 WL 812997 at *2-3, State v. Pacheco, No. CAAP-11-0000571, 2012 WL 5990275 at *1-2 (App. Nov. 30, 2012) (SDO), Transfiguracion, 2012 WL 5897413 at *3-4, State v. Behrendt, No. 29191, 2009 WL 3653563 at *2 (App. Nov. 4, 2009) (SDO).  Here, evidence of the "abuse process" was relevant to explain that a child may delay reporting because the molester has normalized the abuse.  After outlining the ways in which a child molester will start the abuse process, Dr. Bivens was asked, "What do the studies show about how a child can be coerced to willingly participate in the sexual acts?"  He replied, "We simply know that the children will, you know - will frequently acquiesce to what the molester is doing and they will tend to go along with it."  Further, testimony that "probably eighty percent of the time there's not any real physical force involved[,]" and "eighty-five percent of the time . . . the child has a pre-existing nonsexual relationship with their molester[,]" was relevant to dispel notions that most child molesters are strangers or abductors.  Batangan, 71 Haw. at 557-58, 799, P.2d at 52.  ("Expert testimony exposing jurors to the unique interpersonal dynamics involved in prosecutions for intrafamily child sexual abuse may play a particularly useful role by disabusing the jury of some widely held misconceptions so that it may evaluate the evidence free of the constraints of popular myths.") (citations, internal quotation marks, ellipses, and brackets omitted).

In addition, McDonnell noted that "it is staggering how closely Bivens' testimony about typical child abuse cases matched

and highlighted the State's other evidence against McDonnell[,]" and argued that "Bivens' testimony about the 'abuse process' and typical child molesters unduly prejudiced McDonnell because it shifted the jury's focus from properly evaluating KM's credibility to instead determining 'whether the evidence against [him] matched the evidence in the usual case involving sexual abuse of a young child.'" "Thus, it created an unwarranted presumption that McDonnell was a child molester because he engaged in certain behaviors . . . that were as likely to be innocent as incriminating." However, we have previously rejected the argument that "if the alleged behavior of a defendant in a sexual abuse case involving a minor is consistent with the findings of general scientific studies on child molesters, then expert testimony on those studies is impermissible. Such a proposition is inconsistent with the controlling case law of this jurisdiction." Transfiguracion, 2012 WL 5897413 at *3 (citation omitted). Furthermore, Dr. Bivens did not profile McDonnell as a sex offender. As stated, he told the jury he did not know the facts of the case. He also made it clear that there is not a profile "to a typical child molester", saying:

> I want to emphasize it is not possible to look at a person, look at their demographic characteristics, or even their personality characteristics and determine whether or not they're a child molester. Child molesters are defined by the child molestation behavior itself, not by any sort of profiling evidence or anything like that.

Also, during closing, the State "merely referenced Dr. Bivens' testimony to explain the progression of abuse that developed between [McDonnell] and [KM]." Behrendt, 2009 WL 3653563 at *2. Thus, we conclude that the Family Court did not abuse its discretion when it allowed Bivens' testimony.

For these reasons, the Family Court's November 19, 2013 Judgment is affirmed as to Count I, and vacated as to Counts IV-

VI, and the case is remanded with instruction to dismiss Counts IV-VI without prejudice.

DATED: Honolulu, Hawaiʻi, January 30, 2015.

On the briefs:

Craig W. Jerome
Deputy Public Defender
for Defendant-Appellant

Stephen K. Tsushima
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Presiding Judge

Associate Judge